1

2

3                                                                     FILED IN THE
                                                                U.S. DISTRICT COURT
                                                          EASTERN DISTRICT OF WASHINGTON

4                                                           Nov 04, 2020

                                                             SEAN F. McAVOY, CLERK

5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF WASHINGTON**

7    MICHAEL P.,[1]                    | No. 1:20-cv-03009-MKD
                        Plaintiff,     |
8                                      | ORDER GRANTING PLAINTIFF'S
         vs.                           | MOTION FOR SUMMARY
9                                      | JUDGMENT AND DENYING
     ANDREW M. SAUL,                   | DEFENDANT'S MOTION FOR
10   COMMISSIONER OF SOCIAL            | SUMMARY JUDGMENT
     SECURITY,                         |
11                      Defendant.     | ECF Nos. 15, 18

12

13         Before the Court are the parties' cross-motions for summary judgment.  ECF

14   Nos. 15, 18.  The parties consented to proceed before a magistrate judge.  ECF No.

15   7.  The Court, having reviewed the administrative record and the parties' briefing,

16

17   _____

18   [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19   identifies them by only their first names and the initial of their last names.  *See*

20   LCivR 5.2(c).

     ORDER - 1

1   is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

2   motion, ECF No. 15, and denies Defendant's motion, ECF No. 18.

### JURISDICTION

4   The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

### STANDARD OF REVIEW

6   A district court's review of a final decision of the Commissioner of Social

7   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8   limited; the Commissioner's decision will be disturbed "only if it is not supported

9   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation. *Id.*

17  In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

1  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7  *Sanders*, 556 U.S. 396, 409-10 (2009).

8  **FIVE-STEP EVALUATION PROCESS**

9  A claimant must satisfy two conditions to be considered "disabled" within

10  the meaning of the Social Security Act.  First, the claimant must be "unable to

11  engage in any substantial gainful activity by reason of any medically determinable

12  physical or mental impairment which can be expected to result in death or which

13  has lasted or can be expected to last for a continuous period of not less than twelve

14  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

15  "of such severity that he is not only unable to do his previous work[,] but cannot,

16  considering his age, education, and work experience, engage in any other kind of

17  substantial gainful work which exists in the national economy."  42 U.S.C. §

18  1382c(a)(3)(B).

19  The Commissioner has established a five-step sequential analysis to

20  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis

concludes with a finding that the claimant is disabled and is therefore entitled to

benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 8, 2009, Plaintiff applied for Title II disability and disability insurance benefits alleging a disability onset date of August 17, 2007.  Tr. 180, 516-22.  The application was denied initially, and on reconsideration.  Tr. 253-55; Tr. 259-63.  Plaintiff applied for Title XVI supplemental security income benefits on April 15, 2011; this application was escalated to the hearing level.  Tr. 523-29. Plaintiff appeared before an administrative law judge (ALJ) on December 5, 2011, Tr. 41-83, and the ALJ denied Plaintiff's claim on February 23, 2012, Tr. 182-206. Plaintiff appealed the denial, resulting in a remand from the Appeals Council on May 10, 2013.  Tr. 207-10.  A remand hearing was held on October 7, 2013, Tr. 84-90, which resulted in a March 28, 2014 partially favorable decision.  The ALJ found Plaintiff was disabled from August 17, 2007 through December 12, 2008 with disability ending December 13, 2008.  Tr. 211-44.

ORDER - 6

Plaintiff again appealed the decision, resulting in a remand from the Appeals Council on December 10, 2015.  Tr. 246-50.  The Appeals Council vacated the hearing decision only with respect to the issue of disability during the period of September 27, 2013 onward.  Tr. 248.  Plaintiff amended his alleged onset date to September 27, 2013, resulting in a dismissal of his title II claim due to the amended alleged onset date being after Plaintiff's date last insured.  Tr. 1944.  A third hearing was held August 2, 2016, resulting in a partially favorable decision in which the ALJ found Plaintiff was not disabled from September 27, 2013 through April 3, 2016, but became disabled on April 3, 2016 and remained disabled through the date of the decision.  Tr. 2018-42.  Plaintiff again appealed the decision, resulting in a stipulated remand on February 13, 2018.  Tr. 2050-60.  The ALJ was instructed to re-evaluate the period between September 27, 2013 and April 3, 2016.  Tr. 2061-66.  A fourth hearing was held on September 9, 2019, Tr. 1978-2017, which resulted in an unfavorable decision on October 2, 2019, Tr. 1940-65.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 8, 2009.  Tr. 1947.  At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, status post cervical fusion, rotator cuff repair, and right carpal tunnel release.  *Id*.

ORDER - 7

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can sit for one hour at a time for a total of 6 hours in an 8-hour workday with normal breaks. (This requires the opportunity to rise and stretch and return to seated position for less than one minute every hour). [Plaintiff] can stand and walk for 15 minutes at a time for a total of 2 hours in an 8-hour workday with normal breaks. [Plaintiff] can never perform work at the overhead level and can otherwise frequently, but not constantly, reach, handle and finger. [Plaintiff] can never climb ladders, ropes or scaffolds or work in proximity to heavy machinery with dangerous moving part[s]. [Plaintiff] can also occasionally stoop, kneel, crouch and crawl and can frequently balance.

Tr. 1948.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 1953. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as document preparer, telephone quotation clerk, and call out operator. Tr. 1954. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from September 27, 2013 through April 3, 2016. Tr. 1955.

ORDER - 8

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ conducted a proper step-two analysis; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of Steven Foster, M.D. and Wing Chau, M.D.  ECF No. 15 at 5-11.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

ORDER - 9

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER - 10

*1.  Dr. Foster*

On April 15, 2014, Dr. Foster, Plaintiff's primary care physician, completed a questionnaire regarding Plaintiff's functioning.  Tr. 1909-13.  Dr. Foster diagnosed Plaintiff with bilateral shoulder pain, neck pain (cervicalgia), chest/rib pain, and vision changes.  Tr. 1910.  Dr. Foster opined Plaintiff's shoulder pain markedly impacts his ability to lift, carry, handle, push, pull, and reach; his neck pain markedly limits his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch; his chest/rib pain moderately limits his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch; and his vision changes impact his ability to see, but the severity is unknown.  Tr. 1910.  He further opined Plaintiff can perform sedentary work, and the limitations would last 12 months.  Tr. 1911.

On July 21, 2016, Dr. Foster, completed a second questionnaire regarding Plaintiff's functioning.  Tr. 1937-39.  Dr. Foster diagnosed Plaintiff with cervicalgia, bilateral shoulder pain, and chronic pain.  Tr. 1937.  Dr. Foster opined Plaintiff needs to lie down every hour for 45 minutes due to pain; he is unable to tolerate repetitive activities; he would miss four or more days per month if he worked full-time; he is unable to perform even sedentary work full-time; and the limitations have existed since April 15, 2014.  Tr. 1937-39.

ORDER - 11

1    The ALJ stated she agrees with Dr. Foster's 2014 opinion.  Tr. 1951.  The

2  ALJ then stated the 2016 opinion was rendered after the relevant adjudicative

3  period and during an adjudicated period where Plaintiff was found to be disabled.

4  *Id*.  The ALJ did not state what, if any, weight was given to the opinion nor give

5  any further analysis of the 2016 opinion.  Tr. 1951.  While Plaintiff argues Dr.

6  Foster's 2016 opinion that Plaintiff would miss work four days per month is

7  uncontradicted, ECF No. 15 at 10, Dr. Palasi opined in 2014 that Plaintiff was

8  capable of sedentary work, Tr. 2215, and Dr. Wolfe opined in 2009 that Plaintiff

9  was capable of light work on a full-time basis, Tr. 959-60.  As Dr. Foster's opinion

10  is contradicted, the ALJ was required to give specific and legitimate reasons,

11  supported by substantial evidence, to reject Dr. Foster's opinion.  *See Lester*, 81

12  F.3d at 830-31.

13    The ALJ did not indicate the weight given to Dr. Foster's 2016 opinion.

14  Because the ALJ did not incorporate Dr. Foster's disabling opinion into the RFC,

15  the Court concludes the opinion was rejected.  The only reason the ALJ provided

16  to reject the opinion was that the opinion was rendered after the relevant

17  adjudicative period.  *Id.*  Evidence from outside the relevant period may be of

18  limited relevance.  *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165; *see*

19  *also Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989) (report that predated period at

20  issue was relevant only to proving Plaintiff's condition had worsened); *Johnson v.*

ORDER - 12

1   *Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of

2   medical opinions that were remote in time, and reliance on more recent opinions);

3   *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of

4   social worker's opinion rendered more than a year after the date last insured was a

5   germane reason to not address the opinion).  The Ninth Circuit, however, has held

6   that the ALJ is required to consider "all medical opinion evidence."  *Tommasetti v.*

7   *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  In

8   an unpublished disposition the Ninth Circuit held it was error for the ALJ to

9   "silently disregard" medical opinion evidence that predates the alleged onset date.

10   *Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (quoting *Carmickle*, 533

11   F.3d at 1165).

12        Here, the opinion was rendered less than four months after the relevant

13   period and Dr. Foster opined that Plaintiff's limitations existed since at least April

14   15, 2014, Tr. 1939, which is within the relevant period.  Defendant argues the ALJ

15   properly rejected Dr. Foster's opinion because it was given outside the relevant

16   period and because it contradicts his prior opinion, ECF No. 18 at 8.  However, the

17   ALJ did not provide an analysis of conflicts between the opinions, nor any further

18   consideration or analysis of the July 2016 opinion.  Without any meaningful

19   analysis of the opinion, such as an explicit recognition by the ALJ that Dr. Foster

20   opined the limitations existed during the relevant time period, or any analysis of

ORDER - 13

1   why the opinion was rejected given its applicability to the relevant period, the

2   Court cannot find the ALJ properly rejected the opinion due it being rendered

3   outside the relevant period.  As such, the ALJ erred in rejecting Dr. Foster's

4   disabling opinion.  Given the limitations assessed would be disabling, the Court

5   cannot find the error harmless.

6       *2.  Dr. Chau*

7       On March 1, 2016, Dr. Chau performed a physical consultative examination

8   and provided an opinion on Plaintiff's functioning.  Tr. 1771-79.  Dr. Chau

9   diagnosed Plaintiff with a history of C6/C7 fusion, morbid obesity, and status-post

10  right carpal tunnel release, left rotator cuff repair, and left bicipital tendon repair.

11  Tr. 1773.  Dr. Chau noted Plaintiff exhibited "much" Waddell's signs[2] during the

12  examination.  *Id.*  He opined Plaintiff can perform full-time sedentary work, should

13  avoid repetitive movement of the right wrist, and he is limited to no overhead

14  _____

15  [2] Waddell's signs may indicate non-organic causes of reported pain, such as a

16  psychological component, exaggeration, or malingering; a finding of three or more

17  Waddell's signs is considered "clinically significant."  *See Buell v. Berryhill,* 716

18  F. App'x 600, 602 (9th Cir. 2017) (citing Gordon Waddell et al., *Nonorganic*

19  *Physical Signs in Low-Back Pain*, 5 Spine 117, 118 (Mar.-Apr. 1980); *accord*

20  *Reinertson v. Barnhart*, 127 F. App'x. 285, 289 (9th Cir. 2005)).

activities with the left shoulder. *Id.* Dr. Chau further opined Plaintiff can lift and carry up to 10 pounds frequently, and never lift more than 10 pounds; sit for one hour at a time for a total of five hours in a day; stand for 15 minutes at a time for a total of two hours in a day; walk for 15 minutes at a time for a total of one hour in a day; he does not need to use a cane; he can never reach overhead with the left and occasionally with the right, frequently reach in other directions with the right, and occasionally reach in other directions with the left, handle, finger, feel, and push/pull; frequently operate foot controls; occasionally climb stairs/ramps, frequently balance, and never climb ladders/scaffolds, stoop, kneel, crouch or crawl; frequently work around unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, vibrations, and operate a motor vehicle, and can work around loud noises. Tr. 1774-79. Dr. Chau stated his opinion applied to the time period of March 1, 2016 onward. Tr. 1779.

The ALJ stated that she "largely incorporated" Dr. Chau's opinion into the RFC but found greater restrictions are not supported by treatment records; the ALJ did not specifically state the weight given to Dr. Chau's opinion. Tr. 1952. As Dr. Chau's opinion is contradicted by the opinion of Gene Griffith, M.D., Tr. 1933-35,

ORDER - 15

1  the ALJ was required to give specific and legitimate reasons, supported by

2  substantial evidence, to reject the opinion.  *See Lester*, 81 F.3d at 830-31.

3      While the ALJ stated Dr. Chau's opinion was largely incorporated into the

4  RFC, multiple restrictions were not incorporated.  First, Dr. Chau opined Plaintiff

5  can only occasionally handle, finger, feel, and push/pull, and reach in directions

6  besides overhead with the left arm, Tr. 1776, while the ALJ found Plaintiff can

7  frequently engage in manipulative tasks, Tr. 1948.  The ALJ provided no

8  explanation for rejecting Dr. Chau's opinion regarding the frequency of Plaintiff's

9  manipulation limitations.  While the ALJ generally stated the objective evidence is

10 inconsistent with Dr. Chau's more restrictive limitations, the ALJ did not cite to or

11 provide an analysis of evidence that is inconsistent with Dr. Chau's opinion that

12 Plaintiff can only reach occasionally handle, finger, feel, push/pull, and reach with

13 his left arm.

14     Second, Dr. Chau opined Plaintiff cannot stoop, kneel, crouch, or crawl.  Tr.

15 1777.  Dr. Chau's opinion regarding Plaintiff's postural limitations is more

16 restrictive than the RFC, which limits Plaintiff to occasional stooping, kneeling,

17 crouching, and crawling.  Tr. 1948.  The ALJ found Dr. Chau did not provide

18 objective evidence to support this opinion.  Tr. 1952.  The Social Security

19 regulations "give more weight to opinions that are explained than to those that are

20 not." *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228.  Dr. Chau stated his opinion was based on the objective evidence, Tr. 1773, and his examination includes findings of abnormal range of motion, including an inability to do any trunk flexion, spasm of the low back with movement to the supine position, impaired pinch and grip strength, and decreased strength in his joints, though Dr. Chau noted Plaintiff did not appear to be trying "particularly hard."  Tr. 1772.

The ALJ further noted that while Dr. Chau opined Plaintiff cannot stoop, dr. Chau found Plaintiff can sit, and the ALJ stated "stooping is necessary to achieve a sitting position."  Tr. 1952.  Stooping is defined as "bending the body downward and forward by bending the spine at the waist," SSR 83-14, which is not required to sit.  The ALJ further noted Dr. Chau's limitation opinion is not supported by the evidence, such as a normal knee examination, and negative straight leg raise, Tr. 1952.  However, Plaintiff does not allege a knee impairment, ECF No. 15 at 6, and the ALJ did not explain how a normal knee examination impacts stooping, which involves bending at the waist.  Dr. Chau's report contains objective findings demonstrating limitations that are consistent with Dr. Chau's opinion.

Lastly, the only other analysis of Dr. Chau's opinion is the ALJ's statement that Dr. Chau found Plaintiff demonstrated Waddell's signs.  Tr. 1773.  Defendant argues the presence of Waddell's signs was a sufficient reason to reject Dr. Chau's

ORDER - 17

opinion.  ECF No. 18 at 6.  However, the ALJ did not explain how the presence of Waddell's signs detracted from the weight afforded to the rejected portions of the opinion, when the ALJ credited most of Dr. Chau's opinion despite the presence of Waddell's signs.

As such, the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, to reject Dr. Chau's opinion.  While Defendant argues any error would be harmless because the postural limitations do not impact the step five findings, ECF No. 18 at 7, Defendant did not address the manipulative limitations.  The vocational expert testified there would be no jobs Plaintiff could perform if he was limited to only occasional reaching, handling, and fingering in addition to the other limitations accounted for in the RFC.  Tr. 2014.  Accordingly, the Court cannot find the error to be harmless.

**B. Step-Two**

Plaintiff contends the ALJ erred in finding Plaintiff's depression, fibromyalgia, and migraines/headaches are non-severe impairments.  ECF No. 15 at 11-15.  At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To establish a severe impairment, the claimant must first demonstrate the existence of a physical or mental impairment by providing medical evidence consisting of

ORDER - 18

signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  SSR 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 19

evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ found fibromyalgia to be non-severe, Tr. 1947, and that migraine headaches were not a medically determinable impairment during the relevant time. *Id.* Tr. 1947, 1949. The ALJ did not discuss Plaintiff's depression in the decision.

In September 2012, Dr. Thysell found Plaintiff's symptoms of depression were worsening. Tr. 1649. In October 2012, Dr. Thysell noted there was a question of the depression diagnosis, Tr. 1646, but he ultimately found in December 2012 that Plaintiff had depression secondary to pain, Tr. 1644. Dr. Gomez also diagnosed Plaintiff with depression in March 2013, six months before the relevant period, Tr. 1642. Dr. Foster diagnosed Plaintiff with depression in April 2015, during the relevant period, Tr. 1818. Plaintiff's answers to the screening questionnaire for depression in 2014 and 2015 indicated his depressive symptoms were moderate to severe, Tr. 1813, 1832, and he was prescribed anti-depressants in 2015, Tr. 1818. Plaintiff testified he was experiencing depression and he had difficulty controlling his anger and his attitude. Tr. 1997, 2000. The ALJ's failure to address Plaintiff's diagnosis of depression and determine if it was a severe impairment was an error. While Plaintiff makes further arguments

ORDER - 20

regarding the step two analysis, the Court finds considering the additional

arguments unnecessary as remanding for benefits is appropriate for the reasons

discussed herein.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 15 at 15-19.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

1   symptom claims are being discounted and what evidence undermines these claims.

2   *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

3   Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

4   symptom claims)).  "The clear and convincing [evidence] standard is the most

5   demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

6   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

7   924 (9th Cir. 2002)).

8          Factors to be considered in evaluating the intensity, persistence, and limiting

9   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

10  duration, frequency, and intensity of pain or other symptoms; 3) factors that

11  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

12  side effects of any medication an individual takes or has taken to alleviate pain or

13  other symptoms; 5) treatment, other than medication, an individual receives or has

14  received for relief of pain or other symptoms; 6) any measures other than treatment

15  an individual uses or has used to relieve pain or other symptoms; and 7) any other

16  factors concerning an individual's functional limitations and restrictions due to

17  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

18  416.929(c).  The ALJ is instructed to "consider all of the evidence in an

19  individual's record," to "determine how symptoms limit ability to perform work-

20  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 22

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 1949.

The ALJ provided a single reason to reject Plaintiff's symptom complaints. The ALJ found that Plaintiff's testimony was inconsistent because Plaintiff failed to clearly differentiate his symptoms during the relevant period from other periods. *Id.* The ALJ found Plaintiff testified regarding his present migraines rather than testifying about his symptoms during the relevant time period, as Plaintiff's migraines were not a medically determinable impairment during the relevant time. *Id.* Whether there is objective evidence of claimant having a medically determinable impairment that could reasonably cause the reported symptoms is a relevant consideration. *See Molina*, 674 F.3d at 1112. However, the ALJ did not address any of Plaintiff's testimony beyond his testimony regarding his migraines. Plaintiff testified he was in an accident in 2013, which resulted in a coma. Tr. 1987-88. After coming out of the coma and being released from the hospital, he had rib pain, numb hands, and migraines. Tr. 1989. Plaintiff reported experiencing migraines prior to 2013, and testified they lasted up to several hours. Tr. 1990. He also had neck and shoulder pain, Tr. 1989-90, and did not have surgery for his shoulder pain until 2015. Tr. 1992. Plaintiff testified that during

1  the period between 2013 and 2016, he had decreased hand strength, difficulty

2  holding items, and turning his neck exacerbated his hand numbness.  Tr. 1992-93.

3  Plaintiff testified that during the relevant time period, he would not have been able

4  to perform even sedentary work, as it would exacerbate his migraines and pain.  Tr.

5  1994.  Plaintiff briefly began talking about his present symptoms, but his

6  representative clarified with him that Plaintiff also meant he would have had the

7  difficulties and inability to work between 2013 and 2016.  Tr. 1995-96, 1999-2000.

8  Plaintiff also testified he was having difficulty controlling his frustration, anger

9  and depression during the relevant period.  Tr. 1997-98.

10        Further, while the ALJ found Plaintiff's testimony at the 2019 hearing did

11  not clearly differentiate what testimony applied to what time period, the ALJ did

12  not address Plaintiff's statements made at the 2011, 2014, or 2016 hearings, nor in

13  his 2009 function report, though two of the hearings fell during the relevant time

14  period.  While the ALJ summarized some of the objective evidence, he did not

15  offer an analysis as to what objective evidence is inconsistent with any portion of

16  Plaintiff's testimony besides his reported migraines being inconsistent with the

17  evidence.  Tr. 1949-50.  Further, an ALJ may not discredit a claimant's symptom

18  testimony and deny benefits solely because the degree of the symptoms alleged is

19  not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

20

ORDER - 24

857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 46-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Defendant argues the ALJ rejected the opinion in part because Plaintiff was non-compliant with treatment and had poor effort on examination. ECF No. 18 at 12. However, the ALJ merely noted Plaintiff had a period where he did not follow prescribed treatment and had poor effort on examination, and found the evidence supported the RFC, Tr. 1953, but did not set forth any analysis of how Plaintiff's compliance and effort related to Plaintiff's symptom claims. Further, the ALJ acknowledged that the non-compliance and issue with effort took place four to six months outside of the relevant period, yet stated the evidence supports the RFC. *Id.* This is inconsistent with the ALJ rejecting Dr. Foster's July 2016 opinion because it was rendered outside the relevant period, Tr. 1951, given the opinion was rendered only four months after the relevant period, and Dr. Foster stated the opinion applied to the relevant period. As such, the ALJ erred in rejecting Plaintiff's symptom claims without providing clear and convincing reasons for the rejection.

**D. Step-Five**

Plaintiff argues the ALJ erred at step five because the ALJ did not identify jobs that exist in sufficient numbers as the Vocational Expert's testimony was flawed. ECF No. 15 at 19-20. "[I]f a claimant establishes an inability to continue

ORDER - 25

1   [his] past work, the burden shifts to the Commissioner in step five to show that the

2   claimant can perform other substantial gainful work." *Burch*, 400 F.3d at 679

3   (*citing Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  At step five, "the

4   ALJ ... examines whether the claimant has the [RFC] ... to perform any other

5   substantial gainful activity in the national economy." *Id*.  "If the claimant is able to

6   do other work, then the Commissioner must establish that there are a significant

7   number of jobs in the national economy that claimant can do." *Tackett*, 180 F.3d

8   at 1099.  "There are two ways for the Commissioner to meet the burden of

9   showing that there is other work in 'significant numbers' in the national economy

10  that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the

11  Medical-Vocational Guidelines...." *Id*.  "If the Commissioner meets this burden,

12  the claimant is not disabled and therefore not entitled to ... benefits." *Id*. (citation

13  omitted).  "If the Commissioner cannot meet this burden, then the claimant is

14  disabled and therefore entitled to ... benefits." *Id*. (citation omitted).  The Court

15  declines to address this issue, as the case is appropriate for remanding for

16  immediate benefits based on the ALJ's erroneous rejection of the medical opinion

17  evidence and Plaintiff's testimony.  If the opinions and testimony were credited as

18

19

20

ORDER - 26

1  true, Plaintiff would be found unable to perform any work, and as such, the number

2  of jobs at step five would be irrelevant.

3  **E. Remedy**

4      Plaintiff urges this Court to remand for an immediate award of benefits.

5  ECF No. 15 at 20-2.  Defendant has not presented any arguments against Plaintiff's

6  request for immediate benefits.  "The decision whether to remand a case for

7  additional evidence, or simply to award benefits is within the discretion of the

8  court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v.*

9  *Heckler*, 761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's

10 decision for error, the Court "ordinarily must remand to the agency for further

11 proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v.*

12 *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare

13 circumstances, is to remand to the agency for additional investigation or

14 explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th

15 Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has

16 "stated or implied that it would be an abuse of discretion for a district court not to

17 remand for an award of benefits" when three conditions are met.  *Garrison*, 759

18 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record

19 has been fully developed and further administrative proceedings would serve no

20 useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

ORDER - 27

1   rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

2   improperly discredited evidence were credited as true, the ALJ would be required

3   to find the claimant disabled on remand, the Court will remand for an award of

4   benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the

5   three prongs have been satisfied, the Court will not remand for immediate payment

6   of benefits if "the record as a whole creates serious doubt that a claimant is, in fact,

7   disabled."  *Garrison*, 759 F.3d at 1021.  Here, the Court finds that each of the

8   credit-as-true factors is satisfied and that remand for the calculation and award of

9   benefits is warranted.

10          As to the first element, administrative proceedings are generally useful

11  where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020,

12  there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or

13  the "presentation of further evidence ... may well prove enlightening" in light of

14  the passage of time, *I.N.S. v. Ventura*, 537 U.S. 12, 18 (2002),  *Cf. Nguyen v.*

15  *Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996) (remanding for ALJ to apply

16  correct legal standard, to hear any additional evidence, and resolve any remaining

17  conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill*, 12

18  F.3d at 918, 919 (9th Cir. 1993) (same); *Bunnell*, 947 F.2d at 348 (en banc) (same).

19  Here, Plaintiff has been found disabled during the time periods both before and

20  after the period at issue.  This Court is considering remote evidence related to only

ORDER - 28

the period between September 27, 2013 through April 3, 2016.  The record during that time period is fully developed and there is ample testimony from Plaintiff in the record; as such, further proceedings would not serve a useful purpose.

As discussed *supra*, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, to reject the opinions of Dr. Chau and Dr. Foster, and Plaintiff's symptom claims.  Therefore, the second prong of the credit-as-true rule is met.  The third prong of the credit-as-true rule is satisfied because if the 2016 opinion of Dr. Foster was credited as true, the ALJ would be required to find Plaintiff disabled for the period from April 15, 2014 through April 3, 2016.  If the opinion of Dr. Chau was credited as true, the ALJ would be required to find Plaintiff disabled from March 1, 2016 onward.  If Plaintiff's statements were credited as true, the ALJ would be required to find Plaintiff disabled for the entire relevant period of September 27, 2013 through April 3, 2016.

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff is disabled, given the findings of disability both before and after the relevant period.  *See Garrison*, 759 F.3d at 1021.  While there is evidence of positive Waddell's signs, as discussed *supra,* the evidence existed at the time of the other two disability findings, and the examination where Plaintiff exhibited the Waddell's signs took place in March 2016 yet he was found disabled as of April 2016; as such, these signs do not cast any serious doubt on whether Plaintiff is

disabled.  Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application.  *Treichler*, 775 F.3d at 1100 (internal citations omitted).  In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of Claimant's advanced age and "severe delay" of seven years in her application.  *Vasquez*, 572 F.3d at 593-94.  Here, Plaintiff experienced unnecessary delays including a five-month wait for a rescheduled hearing because a medical expert mistakenly had not received a copy of the medical evidence prior to the October 2013 hearing, and Plaintiff was required to wait until March 2014 for another hearing with the medical expert.  Tr. 2022.  Plaintiff has appeared for four hearings, and he has appealed his case on three prior occasions, resulting in two remands by the Appeals Council, and one stipulated remand by this Court.  In total, there is a delay of eleven years from the date of the application, which makes it appropriate for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 30

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3.  The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED November 4, 2020.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 31